1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11 | SEIRUS INNOVATIVE ACCESSORIES, INC., a Utah Corporation,

12 |                           Plaintiff,

13

14

15

16 | vs.

17

18

19

20

21 | KOMBI LTD. and KOMBI SPORTS, INC.,

22 |                      Defendants.

23

24

25

CASE NO. 10-CV-1217-H (WMC)

**ORDER:**

**(1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING SEIRUS' '690 AND '804 PATENTS;**

**(2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING TRADE DRESS;**

**(3) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION CAUSES OF ACTION UNDER THE LANHAM ACT AND CALIFORNIA LAW; AND**

**(4) GRANTING DEFENDANT'S REQUEST FOR JUDICIAL NOTICE**

26      On December 30, 2011, Defendant Kombi Ltd. ("Kombi" or "Defendant") filed motions

27 for summary judgment regarding Seirus' Patent Nos. 5,214,804 ("the '804 patent"), 6,272,690

28

1   ("the '690 patent"), Seirus' trade dress claims, and requested judicial notice.[1]  (Doc. Nos. 45

2   & 46.)  On January 16, 2012, Seirus Innovative Accessories, Inc. ("Seirus" or "Plaintiff") filed

3   a response in opposition to Kombi's motions for summary judgment.  (Doc. Nos. 50 & 53.)

4   On January 23, 2012, Kombi filed a reply.  (Doc. Nos. 57 & 58.)

5       The Court held a hearing on January 30, 2012.  Matthew Murphey and Paul McGowan

6   appeared for Seirus, and Kenneth Florek appeared for Kombi.  Based on the following, the

7   Court grants Kombi's motions for summary judgment.

8   **Background**

9       Seirus filed a complaint for patent infringement, trade dress infringement, and unfair

10  competition on April 4, 2010 against Kombi Ltd. and Kombi Sports, Inc.  (Doc. No. 1,

11  Complaint.)  Specifically, Seirus alleges infringement and inducing infringement of the '804

12  patent and the '690 patent by the Kombi accused products.  (Complaint at 4-10.)  The '804

13  patent was filed on January 27, 1992 and issued on June 1, 1993.  The '804 claims are directed

14  to an article of clothing that includes a mask portion to be worn about a user's mouth and nose,

15  and a scarf portion to be worn about a user's neck.  (Doc. No. 46, Ex. 1, the '804 patent).  The

16  '690 patent was filed on March 18, 1996 and issued on August 14, 2001.  The '690  patent

17  contains a single claim directed to a "combination of a sport goggle and an article of

18  protective clothing."  (Doc. No. 46, Ex. 2, the '690 patent).

19      Seirus also asserts claims of trade dress infringement, false designation of origin and

20  unfair competition under the Lanham Act, and unfair competition and unjust enrichment under

21  California law.  (Doc. No. 1, Complaint at 4-10.)

22  **I. Motion for Summary Judgment**

23  **Legal Standard**

24      Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil

25  Procedure if the moving party demonstrates the absence of a genuine issue of material fact and

26  ────────────

27      [1]On December 30, 2011, Kombi requested that the Court take judicial notice of this Court's own files, records, and orders in the case of <u>Seirus Innovative Accessories, Inc. v. Cabela's Inc.</u>, No. 09-CV-102 H (WMC), 2011 U.S. Dist. LEXIS 123697, at *1 (S.D. Cal. Oct. 25, 2011). (Doc. No. 47.)

28  On January 16, 2012, Seirus filed a response in opposition to Kombi's request for judicial notice. (Doc. No. 51.)  On January 23, 2012, Kombi filed a reply.  (Doc. No. 59.)

entitlement to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Freeman v. Arpaio</u>, 125 F.3d 732, 735 (9th Cir. 1997). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. <u>Anderson</u>, 477 U.S. at 248.

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. <u>Id.</u> at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987). Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. <u>Celotex</u>, 477 U.S. at 322. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." <u>Anderson</u>, 477 U.S. at 256. "The 'opponent must do more than simply show that there is some metaphysical doubt as to the material fact.'" <u>Kennedy v. Allied Mut. Ins. Co.</u>, 952 F.2d 262, 265–66 (9th Cir. 1991) (citing <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)). Furthermore, the nonmoving party generally "cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." <u>Kennedy</u>, 952 F.2d at 266; <u>see Foster v. Arcata Assocs.</u>, 772 F.2d 1453, 1462 (9th Cir. 1985), <u>cert. denied</u>, 475 U.S. 1048 (1986); <u>Radobenko v. Automated Equip. Corp.</u>, 520 F.2d 540, 543-44 (9th Cir. 1975).

When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 587. The Court does not make credibility determinations with respect to evidence offered. <u>See</u> <u>T.W. Elec.</u>, 809 F.2d at 630-31 (citing <u>Matsushita</u>, 475 U.S. at 587).

Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts." <u>Hollingsworth Solderless Terminal Co. v. Turley</u>, 622 F.2d 1324, 1335 (9th Cir. 1980).

**A. Seirus' Claims for Patent Infringement**

Seirus claims (i) patent infringement and (ii) inducing patent infringement of U.S. Patent Nos. 5,214,804 ("the '804 patent") and 6,272,690 ("the '690 patent") against Kombi. Kombi moves for summary judgment regarding these claims asserting that the claims of the '804 patent are invalid and that Kombi's products do not infringe the '690 patent.  (Doc. No. 46.)

**1. The '804 Patent**

The '804 patent describes an article of clothing that combines a mask portion to be worn about a user's mouth and nose with a scarf portion to be worn about a user's neck.  Kombi argues that the claims of the '804 patent are invalid as obvious over the prior art and, therefore, cannot be infringed either directly or by inducement.  (<u>Id.</u> at 5.)



///
///

### a. Legal Standard for Obviousness

A patent issued by the United States Patent and Trademark Office ("USPTO") is presumed to be valid. <u>Microsoft Corp. v. i4i Ltd. P'ship</u>, 131 S.Ct. 2238, 2242 (2011). In order to overcome the presumption of validity, a party must prove invalidity by clear and convincing evidence. <u>Id.</u>

A claimed invention is obvious if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a). Obviousness is a legal question based on underlying factual determinations. <u>Eisai Co. Ltd. v. Dr. Reddy's Lab., Ltd.</u>, 533 F.3d 1353, 1356 (Fed. Cir. 2008). "The factual determinations underpinning the legal conclusion of obviousness include 1) the scope and content of the prior art, 2) the level of ordinary skill in the art, 3) the differences between the claimed invention and the prior art, and 4) evidence of secondary factors." <u>Id.</u> (citing <u>Graham v. John Deere Co.</u>, 383 U.S. 1, 17-18 (1966)). Secondary factors include "commercial success, long felt but unsolved needs, failure of others, etc." <u>KSR Int'l Co. v. Teleflex Inc.</u>, 550 U.S. 398, 406 (2007) (quoting <u>Graham</u>, 353 U.S. at 17-18.) Summary judgment may be appropriate if "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent." <u>KSR Int'l Co.</u> at 427.

A patent is likely to be obvious if it merely yields predictable results by combining familiar elements according to known methods. <u>Id.</u> at 416. "[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." <u>Id.</u> at 418. "If a person of ordinary skill in the art can implement a predictable variation, and would see the benefit of doing so, § 103 likely bars its patentability." <u>Id.</u> at 417. In determining obviousness, courts do not need to find "precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." <u>Id.</u> at 418. A person of ordinary skill interprets the prior art "using common sense

1   and appropriate perspective." Unigene Labs., Inc. v. Apotex, Inc., 655 F.3d 1352, 1361 (Fed.

2   Cir. 2011) (citing KSR Int'l Co., 550 U.S. at 421). As the Supreme Court observed:

3       When there is a design need or market pressure to solve a problem and there
        are a finite number of identified, predictable solutions, a person of ordinary
4       skill has good reason to pursue the known options within his or her technical
        grasp. If this leads to the anticipated success, it is likely the product not of
5       innovation but of ordinary skill and common sense.

6   KSR Int'l Co., 550 U.S. at 421. The results of ordinary innovation are not patentable. Id. at

7   427.

8                           **b.  Claims 1-4 and 8-15:  Obviousness Analysis**

9       Claim 1 is directed to an article of clothing comprising three elements: i) a mask

10  member with an upper edge and a lower edge; ii) a scarf member secured to the mask member;

11  and iii) a securing means associated with the scarf member. '804 patent col.6 ll.45-66. The

12  upper edge of the mask member extends along the lower part of the user's eye socket areas

13  contouredly over the nose. Id. The lower edge extends under the user's chin and upwardly

14  toward the upper edge on both sides of the face rearward of the eye socket areas. Id. The

15  upper edge extends rearwardly to the area of the temples, and the lower edge is arcuate and

16  intersects the upper edge in the area of the temples. Id. The scarf member is secured to said

17  mask member along the lower edge and is sized to extend from the lower edge substantially

18  the height of the neck of the user and in width rearwardly about the neck on both sides of the

19  user's head. Id. The securing means is used to secure the article of clothing about the head

20  of the wearer. Id.

21      Claim 2 depends from claim 1, and further requires that the scarf member to have "a left

22  side and a right side which extend rearwardly and are sized to surround the neck of the user."

23  Id. at col.6 l.67 - col.7 l.2. Claim 3 depends from claim 2, and additionally requires that the

24  area under the chin of the scarf member extend in height "from the lower edge of the mask

25  member to the chest area of the user." Id. at col.7 ll.3-6.

26      Claim 4 includes all the limitations of claim 1, and further includes limitations relating

27  to the scarf member. Specifically, claim 4 further limits the scarf member to include a left side

28  and a right side that are sized to surround the neck of the user, and to require the area of the

scarf member under the chin of the user to extend in height from the lower edge of the mask member to the chest area of the user. Id. at col.7 ll.7-35.

Claim 5 depends from claim 4, and additionally requires that the scarf member "extends from the lower edge at the temple area rearwardly about the head of the user." Id. at col.7 ll.36-38. Claims 8-15 ultimately depend from claims 1 or 4, and recite various limitations directed to the materials of the mask and scarf members. Id. at col.8 ll. 6-30.

Kombi cites a number of prior art references to demonstrate the scope and content of the prior art. Kombi asserts that various combinations of these references render the '804 patent invalid for obviousness. (Doc. No. 46-1 at 7-10.) Six of the references cited by Kombi were not before the USPTO when the '804 patent application was examined, including U.S. Patent Nos. 5,025,507 ("the '507 patent"), 4,718,123 ("the '123 patent"), 2,686,317 ("the '317 patent"), 5,109,548 ("the '548 patent"), 202,262 ("the '262 patent"), and 4,768,235 ("the '235 patent"). The cited references that were before the USPTO were analyzed under pre-KSR obviousness standards, and include U.S. Patent Nos. 4,300,240 ("the '240 patent"), 4,825,474 ("the '474 patent"), 772,148 ("the '148 patent"), 4,941,211 ("the '211 patent"), and 766,963 ("the '963 patent"). Representative figures of the prior art references are pictured below:



   '240       '474       '507       '123       '148       '317

10cv1217



**'211**            **'548**            **'262**            **'963**            **'235**

A patent is likely to be obvious if it merely yields predictable results by combining familiar elements according to known methods.  <u>KSR Int'l Co.</u>, 550 U.S. at 418.  The claimed elements of the '804 patent are familiar elements as shown by the many prior art patents cited by Kombi.  The record shows that combining the various elements using known methods, as shown in the prior art, would yield predictable results for cold weather head gear.  For example, the '317 patent, which was not before the USPTO, discloses head wearing apparel for protecting a wearer against severe weather conditions.  '317 patent col.1 ll.1-4.  The '317 patent discloses all elements of claims 1-5 of the '804 patent except the "securing means" of claims 1 and 4.   Representative figures of the '804 and '317 patents are pictured below for reference:



**'804 Patent**                                   **'317 Patent**

The '317 patent teaches a mask member as claimed in claims 1 and 4.  Specifically, flaps 8 and 9 make up the mask portion and extend from the opposite sides 4 and 5 of the hood. '317 patent col.2 ll.52-55.  The flaps are described as "namely face covering portions of cupped formation and generally triangular in shape."  Id.  The prior art patent further describes an upper edge 13 of the mask portion that has a relatively horizontal position in front of the face slightly below the eyes, and a lower edge of the mask portion that is positioned under the chin that extends toward the horizontal edge.  Id. at fig. 2, item13, col.2 ll.21-31, and col.3 ll.33-40.  The upper edge 13 extends along the lower part of the eye socket areas and over the nose.  The upper edge 13 also extends rearwardly to the area of the temples.  Figure 2 shows that the upper edge 13 intersects the lower edge of the mask portion in the area of the temples. Id. at fig. 2, item 13.

The '317 patent teaches a scarf member as claimed in claims 1 and 4.  For example Figure 1 of the '317 contains a scarf portion 6 that extends from the lower edge of the mask member rearwardly to surround the neck of the wearer on both sides of the head.  Id. at fig. 1, item 6, and col.2 ll.31-40.  The scarf member 6 has left and right sides that extend to surround the user's neck, as claimed by the '804 patent in claims 2 and 4.  Id. at fig. 1, item 6.  The scarf portion 6 covers the chest of the wearer and has two sides that come together to surround the neck of the wearer, as required by claims 3 and 4 of the '804 patent.  Id. at fig. 1, item 6, and col.2 ll.35-37.  The scarf portion 6 extends from the mask portion at the wearer's temples to surround the wearer's head, as claimed by the '804 patent in claim 5.  Id.

The '317 patent describes a fastening device that operates to open or close the entire mask and scarf portions in the front portion of the garment.  '317 patent figs. 1 and 3, item 15. Other prior art references disclose the claimed securing means of claims 1 and 4 of the '804 patent.  For example, U.S. Patent No. 4,718,123 ("the '123 patent") teaches a garment for covering the neck of a wearer that has appendages that wrap around the neck and fasten to one another at the ends using a releasable fastener, such as Velcro, buttons, zippers, or snaps.  '123 patent fig. 1, items 2-3, fig. 2, item 10, and col.1 ll.52-57.  Further, U.S. Patent No. 4,300,240 ("the '240 patent") discloses a mask with securing means, such as adjustable velcro strips, for

1  securing the mask around the wearer's head. '240 patent fig. 1, items 88 and 90, and col.4
2  ll.52-57.

3      A patent that is merely a combination of familiar elements combined using known
4  methods that produces predictable results is likely obvious. KSR Int'l Co., 550 U.S. at 418.
5  Here, modifying the scarf portion of the '317 patent to include the fasteners of the '123 patent
6  would yield predictable results. The Supreme Court noted in KSR that, when determining
7  obviousness, "neither the particular motivation nor the avowed purpose of the patentee
8  controls." Id. at 419.

9      Moreover, during prosecution of the '804 patent application, the patent examiner noted
10 in the Notice of Allowance that, "[n]one of the cited references alone or in combination
11 disclose an article of clothing comprising a mask and an attached scarf member where the
12 mask has an upper edge and a lower edge and where the upper edge extends rearwardly to the
13 area of the wearers [sic] temples and where the lower edge is arcuate and intersects the upper
14 edge in the area of the temples." '804 patent, Notice of Allowance of Feb. 19, 1993, at 2. The
15 undisclosed '317 patent describes a lower edge and a horizontal upper edge 13 of a mask
16 portion that intersect approximately at the wearer's temples. '317 patent fig. 2, item 13.
17 Significantly, the '317 patent was not before the examiner. Therefore, the examiner's reasons
18 for allowing the '804 patent are undercut by the existence of the '317 patent.

19     The ultimate judgment of obviousness is a question of law for the Court. KSR Int'l Co.,
20 550 U.S. at 427. Considering the prior art, the scope of the patent claims, and the level of skill
21 in the art,[2] the Court concludes that the record demonstrates no triable issue of material fact

22

23      [2]A specific finding on the level of skill in the art is not required "where the prior art itself
reflects an appropriate level and a need for testimony is not shown." Litton Indus. Prods., Inc. v. Solid
24 State Sys. Corp., 755 F.2d 158, 163-64 (Fed. Cir. 1985). Nevertheless, it is preferable for the court
to specify the level of skill it applies to the invention at issue. Okajima v. Bourdeau, 261 F.3d 1350,
25 1355 (Fed. Cir. 2001). "[E]xpert testimony is not required when the references and the invention are
easily understandable." Wyers v. Master Lock Co., 616 F.3d 1231, 1242 (Fed. Cir. 2010).
26      Kombi argues that the prior art reflects the level of skill in the art as that of an ordinary layman
because the technology associated with cold weather head gear is simple and easily understood. (Doc.
27 No. 66 at 2-3.) For example, the inventor of similar cold weather head gear was an opera singer who
had lived in very cold climates. '123 patent col.1 ll.5-6. Nevertheless, the Court has carefully
28 considered the technology at issue and concludes that a person of ordinary skill in the art possess a
undergraduate degree in textile, mechanical, or materials engineering for the purpose of evaluating
the '804 patent for obviousness. (See, e.g., Doc. No. 46-6 at 5.)

on obviousness for claims 1-5 of the '804 patent.  See, e.g., Media Tech. Licensing, LLC v. Upper Deck Co., 596 F.3d 1334, 1339 (Fed. Cir. 2010) (affirming a district court's summary judgment of obviousness for claims directed to a piece of memorabilia attached to a trading card); Rothman v. Target Corp., 556 F.3d 1310, 1322 (Fed. Cir. 2009) (affirming a jury verdict of obviousness for claims directed to a nursing garment containing an invisible breast support).

Dependent claims 8-12 recite various limitations directed to the materials of the mask and scarf members.  '804 patent col.8 ll.6-18.  The '804 patent indicates that materials within the scope of claims 8-12 were known in the art.  For example, POLAR TEC™ is a flexible, stretchable, fleece-like material that was previously known in the art that falls within the material of claims 8-12.  Id. at col.4 ll.42-55.  Additionally, stretchable mask material of claim 8, such as nylon covered close sponge neoprene is disclosed by the '240 patent.  '240 patent col.5 ll.45-50.  A mask made of the fleece layer and water resistant layer of claims 9-10, such as a mask made of nylon covered close cell sponge neoprene, is disclosed by the '240 patent.  Id. at col.5 ll.45-67.  A scarf made of the soft stretchable fleece-like material of claims 11-12, such as a laminated fabric made of spandex and polyurethane laminate bound to an insulating fleece-knit polyester fabric, is disclosed by the '548 patent.  '548 patent col.1 ll.64-68, and col.4 ll.1-18, 53-58.  Thus, the materials of claims 8-12 were available at the time the '804 patent was filed.  Accordingly, the Court concludes that there is no triable issue as to whether the types of materials recited in the claims were well known in cold weather apparel design.  As a result, the Court determines that it would have been obvious to use these materials to produce the article of clothing of claims 8-12.

Dependent claims 13-15 recite limitations directed to a "middle edge" of the mask member "for positioning under the user's nose and sized to extend substantially the width of the user's nose."  '804 patent col.8 ll.19-30.  The '240 patent discloses all of the features of the middle edge recited in claims 13-15.  '240 patent fig. 3, item 32 and col. 3 ll.27-67.  For example, the '240 patent discloses, "a middle edge 32 in the area above the upper lip.  The middle edge 32 extends essentially the width 33 of the nose piece 26, as best seen in fig. 3.  The nose piece 26, together with the middle edge 32, form a breathing aperture 34 for the

nostrils." Id. Therefore, the Court concludes that the record shows that it would have been obvious to add a middle edge to a mask member. Accordingly, the Court grants Kombi's summary judgment motion with respect to the invalidity of claims 1-4 and 8-15 from the '804 patent for obviousness.

### c. Claims 1-4 and 8-15: Collateral Estoppel

When a court has decided an issue of fact or law necessary to its judgment, collateral estoppel may preclude relitigation of the issue. Hydranautics v. FilmTec Corp., 204 F.3d 880, 885 (9th Cir. 2000). The use of collateral estoppel is permitted to prevent relitigating the validity of a patent after a court has already declared the patent to be invalid. Blonder-Tongue Lab., Inc., v. Univ. of Ill. Foundation, 402 U.S. 313, 350 (1971). Collateral estoppel applies only where it is established that:

> (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated;
> (2) the first proceeding ended with a final judgment on the merits; and
> (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.

Hydranautics, 204 F.3d at 885 (citations omitted).

This Court issued a final judgment on December 12, 2011 concluding that claims 1-4 and 8-15 of the '804 patent are invalid as obvious under 35 U.S.C. § 103(a). (Cabela's, No. 09-CV-102-H (WMC), Doc. No. 493). Seirus, the plaintiff in Cabela's, is asserting the identical claims against Kombi in this case. Therefore, the Court alternatively applies the doctrine of collateral estoppel and precludes Seirus from relitigating the validity of claims 1-5 and 8-15 in this case. Accordingly, the Court grants Kombi's summary judgment motion with respect to the invalidity of claims 1-4 and 8-15 from the '804 patent.

### d. Claims 6 and 7

Claim 6 of the '804 patent requires the claimed scarf member to have "an upper edge which is in alignment with the said upper edge of said mask member." '804 patent col.7 ll.39-41. Claim 7 of the '804 patent depends from claim 6 and requires that the "left side and said right side of said scarf member extend in height from their upper edge downwardly substantially to the shoulders of the user rearwardly of the temple area." '804 patent col.8 ll.1-

5.  Kombi seeks summary judgment as to the obviousness of claims 6 and 7 in light of the '123, '507, '548, '262, and '317 patents.

With respect to claim 6, Kombi alleges that aligning a scarf member with a mask member is a familiar element known in the prior art as demonstrated by the following figures that were not before the patent examiner during the prosecution of the '804 patent.



Fig. 2 of the '123 patent      Fig. 1 of the '507 patent

Fig. 11 of the '548 patent      Fig. 1 of the '262 patent

Kombi further argues that the addition of a scarf member in alignment with a mask member would yield predictable results for cold weather head gear and produces an obvious combination under <u>KSR</u>.  (Doc. No. 46-1 at 11-13.)

With respect to claim 7, Kombi alleges that the '548, '123, '262, and '507 patents disclose a scarf member with right and left sides that extend from the temple area to the

10cv1217

1   shoulders.  (Id.)  Kombi further contends that extending the scarf member from the temple area

2   to the shoulders yields predictable results and produces an obvious combination.  (Id.)

3        The Court agrees that claims 6 and 7 are obvious in light of the prior art.  See KSR Int'l

4   Co., 550 U.S. at 427.  For example, the '317 patent teaches all elements of claim 6, excepting

5   the securing means and the alignment of the upper edge of the scarf and mask members.  The

6   '123 patent teaches the claimed securing means and a scarf member with an upper edge.  '123

7   patent fig. 2, col.1 ll.50-57.  The '123, '507, and '548 patents show scarf members with right

8   and left sides that extend from the temple area to the shoulders.  See '123 patent fig. 2; '507

9   patent fig. 1; '548 patent fig. 11.  In KSR, the Supreme Court held that "the results of ordinary

10  innovation are not the subject of exclusive rights under the patent laws."  KSR Int'l Co., 550

11  U.S. at 427.  As a result, these claims fail to meet the requirement of 35 U.S.C. § 103(a).

12  Seirus has not shown any secondary factors to dislodge the determination that claims 6 and 7

13  are obvious.  Therefore, the Court concludes that the record shows that it would have been

14  obvious to align the upper edge of the scarf and mask members.  The Court concludes that the

15  record shows that it would have been obvious to have a scarf member with right and left sides

16  that extend from the temple areas to the shoulders.  Accordingly, the Court grants Kombi's

17  summary judgment motion with respect to the invalidity of claims 6 and 7 from the '804 patent

18  for obviousness.

19                    **e.  Claim 16**

20       Claim 16 of the '804 patent depends from claim 6 and requires that the "upper edge of

21  said mask member and said scarf member have piping affixed thereto and there along."  '804

22  patent col.8 ll.31-33.  Kombi seeks summary judgment as to the obviousness of claim 16 in

23  light of Figures 1 and 2 of the '507 patent and Figure 12 of the '548 patent.  (Doc. No. 46-1

24  at 15-17.)  Specifically, Kombi alleges that the figures from these patents show a piping on the

25  upper edge of cold weather headgear.  (Id.)

26  ///

27  ///

28  ///



Fig. 1 of the '507 patent



Fig. 2 of the '507 patent



Fig. 12 of the '548 patent

Kombi further contends that affixing piping to the upper edges of mask and scarf members would yield predictable results for cold weather head gear and produces an obvious combination.  (Id.)

The Court concludes that it would have been obvious for a person skilled in the art at the time the '804 patent was filed to arrive at the piping of claim 16.  The Court has construed the term "piping affixed thereto and there along" to mean that "piping is affixed to and extends along the upper edge of the mask member and scarf member."  (Doc. No. 49 (citing Cabela's, No. 09-CV-102-H (WMC), Doc. No. 139 at 10).)  The "strip" disclosed in the '507 patent is a relatively soft material that is folded over upon itself so that the strip edges engage on another and define a sleeve.  '507 patent col.4 ll.6-19.  A layperson designing cold weather head gear would have been able to substitute the "strip" of the '507 patent with the "piping" of the '804 patent to arrive at the article of clothing of claim 16.  See, e.g., KSR Int'l Co., 550 U.S. at 418 (explaining the court "need not seek out precise teachings directed to the challenged claim's specific subject matter, for a court can consider the inferences and creative steps a person of ordinary skill in the art would employ").  Therefore, the Court grants Kombi's summary judgment motion with respect to the invalidity of claim 16 of the '804 patent for obviousness.

10cv1217

### f.  Claims 17 and 18

Claim 17 of the '804 patent refers to "co-acting fasteners secured to said left side and said right side of said scarf member." '804 patent col.8 ll.34-36.  Claim 18 depends from claim 17 and further requires that the co-acting fasteners are "pile and hook fasteners." Id. at col.8 ll.37-38.  Kombi seeks summary judgment as to the obviousness of claims 17 and 18 in light of the '123, '240, and '474 patents.  (Doc. No. 46-1 at 17-19.)  Specifically, Kombi alleges that the figures from these patents show co-acting Velcro® pile and hook fasteners that are secured to the left and right side of the scarf member.



Fig. 1 of the '123 patent



Fig. 1 of the '240 patent



Fig. 5 of the '474 patent



Fig. 6 of the '474 patent

Kombi further argues that the addition of co-acting fasteners, such as Velcro® pile and hook fasteners, yields predictable results for cold weather head gear and produces an obvious

1   combination.  (Id.)

2      Seirus does not dispute that the cited patents show Velcro® pile and hook fasteners.

3   Instead, Seirus argues that Kombi's analysis is insufficient because it merely attempts to

4   establish that the elements of claim 17 and 18 were independently known in the prior art.

5   (Doc. No. 53 at 15.)

6      The Court concludes that summary judgment as to the invalidity of dependent claims

7   17 and 18 is appropriate.  The '123 and '240 patents disclose the type of co-acting fasteners

8   recited in claims 17 and 18 of the '804 patent.  In particular, Figure 1 of the '123 patent and

9   Figure 1 of the '240 patent disclose Velcro® pile and hook fasteners that are secured to the

10   sides of a scarf.  Combining the additional element of co-acting fasteners with the other

11   obvious elements of claims 1 and 2 would yield predictable results for cold weather head gear.

12   KSR Int'l Co., 550 U.S. at 416 ("A patent is likely to be obvious if it merely yields predictable

13   results by combining familiar elements according to known methods.").  Therefore, the Court

14   concludes that the record demonstrates no triable issue of material fact on the obviousness of

15   claims 17 and 18 of the '804 patent.  The Court grants Kombi's summary judgment motion of

16   invalidity.

17                          **g.  Claim 19**

18      Claim 19 of the '804 patent requires the mask member to be made of a "non-stretchable

19   material."  '804 patent col.8 ll.39-40.  Kombi seeks summary judgment as to the obviousness

20   of claim 19.  (Doc. No. 46-1 at 19.)  Seirus represents that it has not asserted claim 19 against

21   Kombi.  (Doc. No. 53 at 16.)  Seirus contends that it would be improper for the Court to

22   determine the validity of claim 19 because this claim is not part of the litigation between the

23   parties.  (Id.)

24      The moving party bears the burden of proving that "the facts alleged, under all the

25   circumstances, show that there is a substantial controversy, between the parties having adverse

26   interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

27   judgment."  Benitec Austl., Ltd. v. Nucleonics. Inc., 495 F.3d 1340, 1343 (Fed. Cir. 2007)

28   (citing MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007)).  A case or controversy

"must be extant at all stages of review, not merely at the time the complaint [was] filed." Benitec, 495 F.3d at 1345 (citing Steffel v. Thompson, 415 U.S. 452, 459 n.10 (1974)). "[T]he existence of a case or controversy must be evaluated on a claim-by-claim basis." Jervis B. Webb Co. v. S. Sys., Inc., 742 F.2d 1388, 1399 (Fed. Cir. 1984).

Seirus' complaint generally alleges that Kombi infringes one or more claims of the '804 patent. But, Seirus represents that it is has not asserted claim 19 against Kombi. Kombi counterclaims that one or more claims of the '804 patent are invalid, without identifying a controversy concerning claim 19. As the moving party, the burden is on Kombi to establish that a case or controversy existed at the filing of its request for declaratory judgment and that the case or controversy still exists concerning claim 19. Kombi has not made the requisite showing. Therefore, summary judgment is not appropriate under MedImmune. 549 U.S. at 127.

## 2. The '690 Patent

The '690 patent contains a single claim directed to a "combination of a sport goggle and an article of protective clothing." Id. at col.6 ll.20-55. The article of clothing includes a mask member for placement about a user's mouth and nose, a head member connected to the mask member for placement about a user's head, and a scarf portion for placement about the user's neck. Id.



10cv1217

**a. Legal Standard for Infringement and Inducing Infringement**

Literal infringement of a claim of a utility patent is established when it is determined that "every limitation in the claim is literally met by the accused device." <u>Kahn v. General Motors Corp.</u>, 135 F.3d 1472, 1476 (Fed. Cir. 1998). "In determining whether there has been infringement, a two step analysis is required. First, the claims must be correctly construed to determine the scope of the claims. Second, the claims must be compared to the accused device." <u>Id.</u>

An accused device "that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." <u>Warner-Jenkinson Co. v. Hilton Davis Chem. Co.</u>, 520 U.S. 17, 21 (1997). However, "the use of the doctrine of equivalents to establish infringement is limited by the doctrine of prosecution history estoppel." <u>Voda v. Cordis Corp.</u>, 536 F.3d 1311, 1324-25 (Fed. Cir. 2008) (citing <u>Warner-Jenkinson</u>, 520 U.S. at 30). Prosecution history estoppel operates by "barring an equivalents argument for subject matter relinquished when a patent claim is narrowed during prosecution." <u>Voda</u>, 536 F.3d at 1324-25.

A patentee may prevail on a claim of infringement by inducement where it shows direct infringement and that the alleged infringer knowingly induced infringement and specifically intended to encourage another's infringement. <u>Broadcom Corp. v. Qualcomm, Inc.</u>, 543 F.3d 683, 697 (Fed. Cir. 2008). In other words, an accused infringer must be shown to have intended to cause the acts of direct infringement and at least should have known that its conduct would cause such direct infringement. <u>Id.</u> at 698.

In a motion for summary judgment of non-infringement, "[t]he movant bears the burden of demonstrating absence of all genuine issues of material fact, the district court must view the evidence in a light most favorable to the nonmovant and draw all reasonable inferences in its favor, and must resolve all doubt over factual issues in favor of the party opposing summary judgment." <u>SRI Int'l. v. Matsushita Elec. Corp. of Am.</u>, 775 F.2d 1107, 1116 (Fed. Cir. 1985). ///

**b.  Sports Goggles Provided in Combination with Clothing**

Claim 1 of the '690 patent is directed to the "combination of a sport goggle and an article of protective clothing." '690 patent col.6 ll.20-55.  Seirus and Kombi agreed to adopt the Court's claim constructions from <u>Cabela's</u>.    (Doc. No. 37.)   In <u>Cabela's</u>, this Court required that the claimed sports goggles "must be provided in combination with an article of clothing."  (<u>Cabela's</u>,  No. 09-CV-102-H (WMC), Doc. No. 139 at 12.)

David Gellis, the vice president of Kombi, provided a sworn affidavit that Kombi has never packaged or sold a head covering or balaclava in combination with sports goggles. (Doc. No. 46-9.)  Based on Mr. Gellis' statement, Kombi contends that its accused products do not meet the limitation requiring that sports goggles must be provided in combination with an article of clothing.  Therefore, Kombi argues that it cannot be liable for literal infringement of the '690 claim because its products do not met every limitation of the claim.

Seirus attempts to rely on websites to show that Kombi permits customers to buy balaclavas, goggles, and other items.  (Doc. No. 53 at 16-17.)  In <u>Cabela's</u>, this Court previously rejected Seirus' argument that the purchase of goggles and an article of clothing at the same time constitutes a combination within claim 1 of the '690 patent.  (<u>Cabela's</u>, No. 09-CV-102-H (WMC), Doc. No. 440 at 11.)  None of the website pages produced by Seirus show Kombi selling goggles in combination with balaclavas.  Instead, the website pages merely demonstrate that Kombi sells several products, including gloves and ski clothes.  There is no showing in the websites or otherwise that Kombi sells goggles in combination with an article of clothing.  Therefore, the Court concludes that Kombi does not meet the combination limitation of claim 1.  Accordingly, there is no triable issue of material fact regarding literal or inducing infringement and the Court grants Kombi's motion for summary judgment of noninfringement of the '690 patent.

**B.  Trade Dress**

Seirus claims trade dress rights in its products and packaging.  Neither Seirus' alleged trade dress in its products nor Seirus' alleged trade dress in its packaging are registered with the United States Patent and Trademark Office.

In order to prevail on a claim for infringement of an unregistered trade dress, the plaintiff bears the burden to prove each of the following elements:  (1) the trade dress is nonfunctional; (2) the plaintiff owns a protectable trade dress in a clearly articulated design or combination of elements that is either inherently distinctive or has acquired distinctiveness through secondary meaning; and (3) the accused mark or trade dress creates a likelihood of confusion as to source, or as to sponsorship, affiliation or connection.  15 U.S.C. § 1125(a)(3); Art Attacks Ink, LLC v. MGA Entm't Inc., 581 F.3d 1138, 1145 (9th Cir. 2009).  Accordingly, in order for Seirus to succeed on its trade dress claims, Seirus must first establish that it has protectable trade dress rights in its products and packaging.

**1. Seirus' Alleged Trade Dress in its Products**

Seirus initially identified the following trade dress: headwear including an angled beak in combination with (1) logo placed proximate the cheek; (2) opening below the nose/above the mouth; (3) holes proximate the user's mouth in a diamond pattern; (4) articulated chin; or (5) equilateral curvature underlying the eyes, that when presented, the combination resembles the contours and angles of the human face.  (Doc. No. 45-3, Ex. B, Seirus' Response to Interrogatory No. 5 at p. 30.)  This alleged trade dress is identical to the one Seirus alleged in Cabela's.  (No. 09-CV-102-H (WMC), Doc. No. 229, Murray Decl. ¶ 2, Ex. A at 4.)

Following Kombi's motion for summary judgment, Seirus tried to supplement its alleged trade dress.  (Doc. No. 57 at 1.)  Kombi asserts that Seirus is bound by its previous trade dress identification.  (Id.)  The Court would expect a party suing for trade dress infringement to identify its trade dress in response to interrogatories.  Nevertheless, the Court addresses the inadequacy of Seirus' newly alleged trade dress.

Seirus' supplemental interrogatories allege that Seirus' product trade dress includes: (1) a beak shaped nose; (2) a triangular opening below the nose and above the mouth; (3) a diamond shaped set of holes in the mouth area; (4) a curved chin area; (5) an  equilateral concave curved opening from the top of the nose to underneath the eyes; and (6) logo placed proximate the cheek bone.  (Doc. No. 50, Ex. 5 to Murphey Decl., Seirus' Supplemental Response to Interrogatory No. 5 at p. 4-7.)  Seirus also contends that its trade dress includes

1  the color black.  (Doc. No. 45 at 4.)

2                          **a. Nonfunctional**

3       Trade dress protection extends only to product features that are not functional.  Disc

4  Golf Ass'n v. Champion Disc, Inc., 158 F.3d 1002, 1006 (9th Cir. 1998).  Trade dress is

5  functional "if it is essential to the use or purpose of the article or if it affects the cost or quality

6  of the article."  TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 33 (2001).  "In

7  determining functionality, a product's trade dress must be analyzed as a whole."  First Brands

8  Corp. v. Fred Meyer, Inc., 809 F.2d 1378, 1381 (9th Cir. 1987); see also, Stormy Clime Ltd.

9  v. ProGroup, Inc., 809 F.2d 971, 974 (2d Cir. 1985) (holding that unique arrangements of

10  purely functional features constitute a functional design and are not entitled to trade dress

11  protection).  Functional features of a product are features which constitute the actual benefit

12  that the consumer wants to purchase, as distinguished from an assurance that a particular entity

13  made, sponsored, or endorsed a product.  Rachel v. Banana Republic, Inc., 831 F.2d 1503,

14  1506 (9th Cir. 1987).  "The fact that individual elements of the trade dress may be functional

15  does not necessarily mean that the trade dress as a whole is functional; rather, 'functional

16  elements that are separately unprotectable can be protected together as part of a trade dress.'"

17  Clicks Billiards, Inc. v. Sixshooters Inc., 251 F.3d 1252, 1259 (9th Cir. 2001) (quoting Le

18  Sportsac, Inc. v. K Mart Corp., 754 F.2d 71, 76 (2d Cir. 1985)).

19       The Ninth Circuit weighs four factors in determining whether a product feature is

20  functional: (1) whether the design yields a utilitarian advantage; (2) whether alternative designs

21  are available; (3) whether advertising touts the utilitarian advantages of the design; and (4)

22  whether the particular design results from a comparatively simple or inexpensive method of

23  manufacture.  Disc Golf, 158 F.3d at 1006.  No one factor is dispositive; all should be weighed

24  collectively.  Int'l Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819, 823 (9th Cir. 1993).

25       The plaintiff bears the burden of proving non-functionality – the accused need not prove

26  that the trade dress at issue is functional.  Rachel, 831 F.2d at 1506.  When a plaintiff fails to

27  produce evidence such that a reasonable trier of fact could find the design nonfunctional, "the

28  district court must enter summary judgment in favor of the defendant."  Cont'l Lab. Prods., Inc.

1   v. Medax Int'l, Inc., 114 F. Supp. 2d 992, 1014-15 (S.D. Cal. 2000) (citing Disc Golf, 158 F.3d
2   at 1009-10).

3      The Court concludes that Seirus' alleged product trade dress is functional.  Seirus'
4   design features do not distinguish the look of the products, but rather permit the user to breathe
5   and see while wearing the product.  Trade dress is functional "if it is essential to the use or
6   purpose of the article or if it affects the cost or quality of the article."  TrafFix, 532 U.S. at 33.
7   Seirus' angled beak that covers the nose, the diamond shaped hole that allows users to breathe
8   through their mouth, and the opening allowing users to see are all essential to the use and
9   purpose of the article because they keep the user's face warm while allowing the user to see
10  and breathe.  Further, functional features of a product are features which constitute the actual
11  benefit that the consumer wants to purchase, as distinguished from an assurance that a
12  particular entity made, sponsored, or endorsed a product.  Rachel, 831 F.2d at 1506.  The Court
13  concludes that the design of Seirus' products yields a utilitarian advantage.

14     Moreover, Seirus touts the utilitarian advantage and functionality in Seirus' advertising
15  materials.  "If a seller advertises the utilitarian advantages of a particular feature, this
16  constitutes strong evidence of functionality."  McCarthy, § 7:74 at 7-152.  For example, Seirus
17  promotes the NEOFLEECE COMBO SCARF as "[o]ffering the ultimate protection from cold"
18  and having a "[v]ent at nose and vent holes at mouth [to] allow for free breathing."  (Doc. No.
19  45-1 at 8 citing (No. 09-CV-102-H (WMC), Murray Decl. ¶ 13).)  The Court concludes that
20  Seirus' advertisements tout the utilitarian benefit of the products' design by promising to
21  protect a user from the cold while venting at the nose and mouth.

22     Despite Seirus' attempt to point to alternative designs, Seirus has failed to produce
23  evidence to support the non-functionality of the products' design.  Further, these particular
24  designs result from a comparatively simple method of manufacture because the features are
25  based on a desire to protect the contours of a person's face from the elements while permitting
26  the user to see and breathe.

27     Additionally, the Court concludes that Seirus' utility patents are strong evidence that
28  the features of these products are functional.  "A utility patent is strong evidence that the

features therein claimed are functional." <u>TrafFix</u>, 532 U.S. at 29-30.  Seirus has an expired utility patent, U.S. Patent No. 4,300,240, claiming a cold weather mask sized and shaped to fit about the face, an angled nose, and an arcuate chin.  (Doc. No. 45-1 at 7.)  Further, Seirus has an expired utility patent, U.S. Patent No. 4,825,474, claiming a cold weather mask with a curved upper edge contoured along the lower part of the eye socket areas.  (<u>Id.</u>)  Seirus' utility patents present strong evidence that the features of these products are functional.

Because Seirus' alleged trade dress in its products is not registered, Seirus bears the burden of proving non-functionality.  15 U.S.C. § 1125(a)(3) ("In a civil action for trade dress infringement under this Act for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of providing that the matter sought to be protected is not functional.")  Based on the record before the Court, Seirus has failed to meet its burden of proof that its product design is not functional because Seirus' design yields a utilitarian advantage, Seirus' advertising touts this utilitarian advantage, and Seirus' utility patents creates strong evidence that the features are functional.  Accordingly, the Court concludes that Seirus' products are functional.

**b. Distinctiveness**

Kombi maintains that Seirus cannot meet its burden of establishing that the product features have acquired distinctiveness or secondary meaning.  (Doc. No. 45-1 at 9-11.)  Kombi relies on the Court's record in <u>Cabela's</u>, (No. 09-CV-102-H (WMC), Doc. No. 350), to demonstrate that Seirus has produced no evidence on secondary meaning and failed to conduct surveys or produce direct evidence from individual consumers.  (<u>Id.</u>)  Seirus contend that secondary meaning can be established through evidence that Kombi intentionally copied Seirus' product.  (Doc. No. 50 at 19.)

Distinctiveness may be established through either the inherent distinctiveness of a product or through evidence of acquired distinctiveness.  A trade dress is inherently distinctive if its "intrinsic nature serves to identify a particular source of a product."  <u>Two Pesos, Inc. v. Taco Cabana, Inc.</u>, 505 U.S. 763, 768 (1992).  The <u>Seabrook</u> test is the predominant means for evaluating the inherent distinctiveness of a trade dress.  <u>Mattel, Inc. v. MGA Entm't, Inc.</u>, 2011

WL 1114250, at *63 (C.D. Cal. Jan 5, 2011).  Under the Seabrook test, the court must determine whether (1) the design or shape is a common, basic shape or design; (2) it is unique or unusual in a particular field; and (3) it is a mere refinement of a commonly adopted and well known form of ornamentation for a particular class of goods which consumers view as mere ornamentation.  Seabrook Foods, Inc. v. Bar-Well Foods Ltd., 568 F.2d 1342 (C.C.P.A. 1977). In other words, courts look at whether the alleged trade dress is so uniquely designed that a buyer will rely on it to differentiate the source of the product.

Trade dress in product configurations such as those at issue in this case, can never be inherently distinctive.  Wal-Mart, 529 U.S. at 213 (product design almost always serves a purpose other than source identification thus a consumer's disposition to equate the feature with the source does not exist).  Instead, the proponent of the trade dress must show that the product configuration has acquired distinctiveness – or secondary meaning.  Id. at 216 (holding that "a product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning").  Secondary meaning, or acquired distinctiveness, is the "mental association by a substantial segment of consumers and potential customers between the alleged trade dress and a single source of the product."  Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9th Cir. 1985) (en banc) (internal quotation omitted).

Secondary meaning may be established either through direct or circumstantial evidence. See, e.g., Express, LLC v. Forever 21, Inc., 2010 WL 3489308 (C.D. Cal. Sept. 2, 2010); Cont'l Lab., 114 F. Supp. 2d at 999.  Direct evidence includes results of an expert survey or direct consumer testimony.  Walker & Zanger, Inc. v. Paragon Indus., Inc., 549 F. Supp. 2d 1168 (N.D. Cal. 2007) ("An expert survey of purchasers typically provides the most persuasive evidence of secondary meaning"); Yankee Candle Co. v. Bridgewater Candle Co., 259 F.3d 25, 43 (1st Cir. 2001).  Alternatively, a plaintiff "may also establish secondary meaning through circumstantial evidence, such as: exclusivity, manner, and length of use, amount and manner of advertising, amount of sales and the number of customers, and plaintiff's established place in the market."  Clamp Mfg. Co. v. Enco Mfg. Co., 870 F.2d 512, 517 (9th Cir. 1989); Cont'l Lab., 114 F. Supp. 2d 992, 1000 (S.D. Cal. 2000) (citing Filipino Yellow Pages v. Asian

1    Journal Publ'ns, 198 F.3d 1143, 1151 (9th Cir. 1999)).

2        Evidence of deliberate copying may, in appropriate cases, support an inference of
3    secondary meaning.  Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 844-45 (9th
4    Cir. 1987).  Evidence of deliberate copying does not always support an inference of secondary
5    meaning because "[c]ompetitors may intentionally copy product features for a variety of
6    reasons.  Competitors may, for example, choose to copy wholly functional features that they
7    perceive as lacking any secondary meaning because of those features' intrinsic economic
8    benefits."  Id.

9        Seirus offers an exhibit that displays images of Seirus' products and Kombi's products,
10   side-by-side, as evidence of intentional copying.  (See Doc. No. 50, Ex. 9 to Edwards Decl.)
11   The exhibit does not raise a triable issue of fact of secondary meaning.  Competitors may copy
12   features that are wholly functional that they perceive lack secondary meaning.  The Court
13   concludes that Seirus has not met its burden of proof that its products are nonfunctional.

14       Following the Court's ruling in Cabela's, (No. 09-CV-102-H (WMC), Doc. No. 350),
15   the Court has permitted Seirus an opportunity to show secondary meaning in this case.
16   Significantly lacking from Seirus' record is any evidence of consumer surveys or proof of
17   secondary meaning.  Seirus' marketing and media evidence does not prove that Seirus'
18   products acquired secondary meaning.  See Levi Strauss &Co., 778 F.2d at 1354 (noting that
19   secondary meaning, or acquired distinctiveness, is the "mental association by a substantial
20   segment of consumers and potential customers between the alleged trade dress and a single
21   source of the product").  Seirus' evidence does not suggest that a substantial segment of
22   consumers and potential consumers have a mental association between the alleged trade dress,
23   a beak shaped nose,  a triangular opening below the nose and above the mouth, a diamond
24   shaped set of holes in the mouth area, or logo placed proximate the cheek bone with the Seirus
25   brand.  In fact, Seirus does not cite any evidence from consumer surveys or consumer
26   testimony.  Instead, Seirus cites testimony from a Seirus representative who states that Seirus'
27   evidence of secondary meaning comes from the representative's "general communication with
28   consumers I see, people I see,  buyers I see, reps I see and talk to."  (Doc. No. 50, Ex. 10 at 71

to Murphey Decl.)  This evidence does not demonstrate that Seirus' trade dress has acquired secondary meaning.

The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." Anderson, 477 U.S. at 256. "The 'opponent must do more than simply show that there is some metaphysical doubt as to the material fact.'" Kennedy, 952 F.2d at 265-66 (citing Matsushita Elec., 475 U.S. at 586). Once Kombi filed a summary judgment motion, Seirus had to come forward with evidence and cannot merely oppose Kombi's motion.  Seirus cannot wait until designation of experts to demonstrate secondary meaning.  Because Seirus must come forward with evidence and failed to do so, the Court concludes that Seirus has failed to demonstrate secondary meaning.

"Consumers should not be deprived of the benefits of competition with regard to the utilitarian and esthetic purposes that product design ordinarily serves by a rule of law that facilitates plausible threats of suit against new entrants based upon alleged inherent distinctiveness." Wal-Mart, 529 U.S. at 213.  The Supreme Court further stated, "[i]n the case of product design, as in the case of color, we think consumer predisposition to equate the feature with the source does not exist." Id.  Therefore, proof of secondary meaning requires Seirus to provide evidence that a substantial segment of consumers have a mental association between Seirus' alleged trade dress and Seirus as the source of the product. Levi Strauss & Co., 778 F.2d at 1354.  Seirus has not met its burden.  Accordingly, the Court concludes that Seirus' alleged trade dress claims in its products fails for distinctiveness.

### c. Likelihood of Confusion

The Ninth Circuit's test for a likelihood of confusion in a trademark infringement case is set forth in AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979).  The Ninth Circuit considers eight factors:  (1) strength of the plaintiff's mark; (2) relatedness or proximity of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.  These factors are equally applicable to a trade dress infringement case. Mattel, 2011 WL 1114250, at *67 (applying Sleekcraft factors

1   in trade dress infringement analysis).

2       Because Seirus' products are functional and lack distinctiveness, Seirus' products are

3   not protectable as trade dress.  Accordingly, the Court need not address the parties' remaining

4   arguments pertaining to likelihood of confusion.  Rachel, 831 F.2d at 1507 n.2 ("Because we

5   find that the district court directed a verdict on functionality, we need not decide whether

6   Rachel submitted sufficient evidence on the issues of secondary meaning and consumer

7   confusion."); Autodesk, Inc. v. Dassault Sys. Soldiworks Corp., 685 F. Supp. 2d 1001, 1016

8   n.3 (N.D. Cal. 2009) ("Since defendant has shown that plaintiff cannot meet its burden

9   concerning distinctiveness, arguments concerning functionality and likelihood of confusion

10  need not be addressed."); Walker & Zanger, 549 F. Supp. 2d at 1181 (granting summary

11  judgment after finding trade dress was not protectable); Cont'l Lab., 114 F. Supp. 2d at 1016

12  n.22 ("Having found that Continental cannot show two essential elements of trade dress

13  infringement (distinctiveness or nonfunctionality), the Court need not reach the parties

14  remaining arguments pertaining to likelihood of confusion.").  The Court need not reach the

15  parties' remaining arguments pertaining to likelihood of confusion because the Court

16  concludes that Seirus' trade dress claim fails because Seirus' products are functional and lack

17  distinctiveness.  Accordingly, the Court grants Defendant's motion for summary adjudication

18  of Seirus' trade dress claims in its products.

19          **2.  Seirus' Alleged Trade Dress in its Packaging**

20      Seirus claims trade dress in its packaging.  (Doc. No. 1 at ¶¶ 12-13.)  Seirus identifies

21  the packaging trade dress as the alleged product trade dress, that "when packaged, is mounted

22  in or appears in profile."  (Doc. No. 45-3, Ex. B, Response to Interrogatory No. 5, p. 9.)  This

23  alleged trade dress is identical to the one Seirus alleged in  Cabela's.  (No. 09-CV-102-H

24  (WMC), Doc. No. 229, Murray Decl. ¶ 2, Ex. A at 4.)  Seirus did not supplement the record

25  to oppose Kombi's motion regarding Seirus' alleged packaging trade dress.

26      Similar to Seirus' alleged product trade dress, Seirus' alleged packaging trade dress is

27  also not registered with the United States Patent and Trademark Office.  Therefore, in order

28  to prevail on a claim for infringement of an unregistered trade dress, Seirus bears the burden

to prove each of the following elements:  (1) that the trade dress is nonfunctional; (2) that the plaintiff owns a protectable trade dress in a clearly articulated design or combination of elements that is either inherently distinctive or has acquired distinctiveness through secondary meaning; and (3) the accused mark or trade dress creates a likelihood of confusion as to source, or as to sponsorship, affiliation or connection.  15 U.S.C. § 1125(a)(3); Art Attacks Ink, 581 F.3d at 1145.  Accordingly, in order for Seirus to succeed on its trade dress claims, Seirus must first establish that it has protectable trade dress rights in its packaging.

### a.  Nonfunctional

The Ninth Circuit weighs four factors in determining whether a product feature is functional: (1) whether the design yields a utilitarian advantage; (2) whether alternative designs are available; (3) whether advertising touts the utilitarian advantages of the design; and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture.  Disc Golf, 158 F.3d at 1006.  Importantly, the plaintiff bears the burden of proving non-functionality – the accused need not prove that the trade dress at issue is functional.  Rachel, 831 F.2d at 1506.

Kombi relies on the evidence from Cabela's, (No. 09-CV-102-H (WMC), Doc. No. 350), to demonstrate that Seirus' packaging is functional.  (Doc. No. 45-1 at 13-14.) Specifically, Kombi argues that Seirus' Co-President, Carey, testified that the profile display of its packaging aids consumers in viewing the product. (Doc. No. 45-1 at 13 (citing Cabela's, No. 09-CV-102-H (WMC), Doc. No. 229, Murray Decl. ¶ 5, Ex. D (Carey Dep. Tr. at 102:3-8)).) Further, Kombi cites evidence that when Carey was asked whether there were alternative methods of packaging the Seirus products which would not infringe the alleged trade dress, Carey stated that the product could be placed in a box.  (Id.)  However, Carey then acknowledged that the consumer would be unable to view the product without taking it out of the box.  (Id.)  Based on the record, the Court concludes that Seirus' packaging serves a utilitarian advantage because it permits the purchaser to view the product.  Disc Golf, 158 F.3d at 1006.  Seirus bears the burden of proving non-functionality – the accused need not prove that the trade dress at issue is functional, and Seirus has failed to meet that burden.  Rachel,

831 F.2d at 1506.  The Court concludes that Seirus has not met its burden of proving non-functionality of its packaging.

### b. Distinctiveness

Kombi maintains that Seirus' packaging has not acquired distinctiveness or secondary meaning.  (Doc. No. 45-1 at 14-15.)  Specifically, Kombi contends that Seirus has produced no evidence to support a finding of inherent distinctiveness.  (Id.)  The Court agrees.

Distinctiveness may be established through either the inherent distinctiveness of a product or through evidence of acquired distinctiveness.  A trade dress is inherently distinctive if its "intrinsic nature serves to identify a particular source of a product."  Two Pesos, Inc., 505 U.S. at 768.  The Seabrook test is the predominant means for evaluating the inherent distinctiveness of a trade dress.  Mattel, 2011 WL 1114250, at *63.  Under the Seabrook test, the court must determine whether (1) the design or shape is a common, basic shape or design; (2) it is unique or unusual in a particular field; and (3) it is a mere refinement of a commonly adopted and well known form of ornamentation for a particular class of goods which consumers view as mere ornamentation.  Seabrook, 568 F.2d 1342.  In other words, courts look at whether the alleged trade dress is so uniquely designed that a buyer will rely on it to differentiate the source of the product.

Kombi cites evidence from Cabela's that Seirus' packaging is a reproduction of packaging commonly used in the clothing industry.  (Doc. No. 45-1 at 15 (citing Cabela's, No. 09-CV-102-H (WMC), Doc. No. 229, Murray Decl. ¶ 6, Ex. E (Marcovitch Dep. Tr. at 90:14-91:5)) ("There were quite a number of people that were using side profile packaging.  I remember people like Turtle Fur were using it quite extensively.  There were just a number of companies selling all sorts of accessories, you know, within our marketplace, mostly Balaclavas.  If you went outside of our market, there were people selling scarves in the fashion market.  It wasn't necessarily something that unique to put a face cardboard, you know, attached to a product.  People in the Halloween mask business have been doing it for quite a while.")  Seirus fails to cite evidence that its packaging is so uniquely designed that a buyer would rely on it to differentiate the source of the product.  In fact, Seirus does not cite any

10cv1217

evidence to support distinctiveness in its packaging.  (See Mattel, 2011 WL 1114250, at *64 (finding no inherent distinctiveness at summary judgment phase for trapezoidal packaging that is commonly used in the toy industry).

Additionally, the nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." Anderson, 477 U.S. at 256.  "The 'opponent must do more than simply show that there is some metaphysical doubt as to the material fact.'" Kennedy, 952 F.2d at 265-66 (citing Matsushita Elec., 475 U.S. at 586).  Once Kombi filed a summary judgment motion, Seirus had to come forward with evidence and cannot merely oppose Kombi's motion.  Seirus cannot wait until designation of experts to demonstrate secondary meaning.  Because Seirus must come forward with evidence and did not do so, the Court concludes that Seirus has failed to demonstrate secondary meaning.  Accordingly, the Court concludes that Seirus' packaging trade dress claims fail for lack of distinctiveness.

### c. Likelihood of Confusion

Because Seirus' packaging is functional and lacks distinctiveness, Seirus' packaging is not protectable as trade dress.  Accordingly, the Court need not address the parties' remaining arguments pertaining to likelihood of confusion.  Rachel, 831 F.2d at 1507 n.2 ("Because we find that the district court directed a verdict on functionality, we need not decide whether Rachel submitted sufficient evidence on the issues of secondary meaning and consumer confusion."); Autodesk, 685 F. Supp. 2d at 1016 n.3 ("Since defendant has shown that plaintiff cannot meet its burden concerning distinctiveness, arguments concerning functionality and likelihood of confusion need not be addressed."); Walker & Zanger, 549 F. Supp. 2d at 1181 (granting summary judgment after finding trade dress was not protectable); Cont'l Lab., 114 F. Supp. 2d at 1016 n.22 ("Having found that Continental cannot show two essential elements of trade dress infringement (distinctiveness or nonfunctionality), the Court need not reach the parties remaining arguments pertaining to likelihood of confusion.").  The Court need not reach the parties' remaining arguments pertaining to likelihood of confusion because the Court concludes that Seirus' packaging trade dress claim  fails because Seirus'

packaging is functional and lacks distinctiveness.  Therefore, the Court grants Kombi's motion for summary adjudication of Seirus' trade dress claims pertaining to Seirus' products and packaging.

**C. Seirus' False Designation of Origin and Unfair Competition Causes of Action**

Kombi moves for summary adjudication on Seirus' causes of action for false designation of origin and unfair competition under the Lanham Act and California law.  (Doc. No. 45-1 at 15-16.)  These causes of action are based on Seirus' alleged product and packaging trade dress.  Because Seirus has no protectable product or packaging trade dress, these causes of action also fail.  (Id.)

Seirus' false designation of origin and unfair competition causes of action under the Lanham Act, 15 U.S.C. § 1125(a), both require that Seirus have an underlying trade dress protection.  The only way a copied product design – or configuration – can confuse as to its source is if the product design that was copied is by itself, without any other source indicators such as trademarks, packaging or symbols, an indicator of a single source or origin; meaning it has become protectable configuration trade dress.  See, e.g., Wal-Mart, 529 U.S. at 210 ("[W]ithout distinctiveness the trade dress would not cause confusion . . . as to the origin, sponsorship, or approval of [the] goods as section [43a] requires."); Yankee Candle, 259 F.3d at 41-42 (affirming summary judgment of no unfair competition under Lanham Act and stating "the relevant intent is not just intent to copy, but to 'pass off one's goods as those of another'").  Based on the foregoing, the Court concludes that Seirus' products and packaging do not "cause confusion . . . as to the origin, sponsorship, or approval of [the] goods as section [43a] requires."  Wal-Mart, 529 U.S. at 210.  Therefore, the Court concludes that Seirus' false designation of origin and unfair competition causes of action under the Lanham Act fail because Seirus does not have the requisite trade dress protection.  Accordingly, the Court grants Kombi's motion for summary adjudication of Seirus' false designation of origin and unfair competition causes of action under the Lanham Act.

Finally, Seirus' California unfair competition cause of action alleges that Defendant's acts of intentional and willful trade dress infringement constitute unfair competition actionable

10cv1217

under the laws of the State of California.  (Doc. No. 1, Complaint, at ¶ 47.)  Because the Court concluded that Seirus does not have protectable trade dress in its products and packaging, Seirus' claim for unfair competition based on trade dress infringement fails.  Based on the foregoing, the Court grants Kombi's motion for summary adjudication of Seirus' false designation of origin and unfair competition causes of action under the Lanham Act and California law.

### D.  Seirus' Unjust Enrichment Cause of Action

Kombi argues that because Seirus' alleged product and packaging trade dress fail, Kombi cannot be unjustly enriched by use, if any, of Seirus' alleged trade dress.  (Doc. No. 45-1 at 17.)  The Court agrees.  Accordingly, the Court grants Kombi's motion for summary adjudication of Seirus' unjust enrichment cause of action.

## II.  Request for Judicial Notice

Pursuant to Fed. R. Evid., Rule 201 and Cal. Evid. C., § 452(d)(1), Kombi requests that this Court take judicial notice of the Court's own files, records, and orders from the case Cabela's, No. 09-CV-102-H (WMC).  (Doc. No.47.)  After reviewing Kombi's request, the Court takes judicial notice that Seirus already litigated these identical products and the Court determined that Seirus' products are functional and lack distinctiveness, meaning Seirus' claims based on alleged trade dress protection fail.  (No. 09-CV-102-H (WMC), Doc. No. 350.)  Additionally, the Court already granted summary judgment in favor of a Defendant in Cabela's, 2011 U.S. Dist. LEXIS 123697, at *1, on the issue of the noninfringement of Seirus' '690 patent and invalidity of claims 1-5, 8-12, and 13-15 of Seirus' '804 patent.

Federal Rule of Evidence 201 permits judicial notice of adjudicative facts, which are defined as facts "not subject to reasonable dispute."  Fed. R. Evid. 201(b).  A judicially noticed fact must be one that is not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  As to matters for which collateral estoppel applies, the court takes judicial notice of the filings, records, and orders from Cabela's, No. 09-CV-102-H (WMC), and recognizes

that it has previously construed these patents and issues.  As to matters for which collateral estoppel does not apply, the Court recognizes that these records, filings, and orders are not binding in the present case.

<u>**Conclusion**</u>

Based on the foregoing, the Court:

(1) GRANTS Kombi's motion for summary adjudication as to the invalidity of claims 1-18 of the '804 patent for obviousness;

(2) DENIES Kombi's motion for summary adjudication on jurisdictional grounds as to the invalidity of claim 19 of the '804 patent for obviousness;

(3) GRANTS Kombi's motion for summary adjudication as to noninfringement of claim 1 of the '690 patent;

(4) GRANTS Kombi's motion for summary adjudication of Seirus' trade dress claims pertaining to Seirus' products and packaging;

(5) GRANTS Kombi's motion for summary adjudication of Seirus' false designation of origin and unfair competition causes of action under the Lanham Act and California law;

(6) GRANTS Kombi's motion for summary adjudication of Seirus' unjust enrichment cause of action; and

(7) GRANTS Kombi's request for judicial notice.

**IT IS SO ORDERED.**

DATED: February 3, 2012

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT